# UNITED STATES DISTRICT COURT
# FOR THE DISTRICT OF COLUMBIA

JANICE G. COCLOUGH,    )
           )
     Plaintiff,  )
           )
  v.        )    Civil Action No. 19-2317 (BAH)
           )
DISTRICT OF COLUMBIA, *et al.*,  )
           )
     Defendants. )

## <u>MEMORANDUM OPINION</u>

Plaintiff Janice G. Coclough was terminated in 2016 from her position as a Court Security Officer in the Superior Court of the District of Columbia and, in 2019, initiated this lawsuit for alleged violation of her constitutional rights under the Fifth Amendment's Due Process Clause against defendants District of Columbia and Richard Parris, in his capacity as Chief Security Officer for the District of Columbia Courts.  After defendants removed the action to this Court, s*ee* Notice of Removal of a Civil Action, ECF No. 1, plaintiff filed her first amended complaint, *see* First Am. Compl. for Declaratory Judgment, Injunctive Relief, and Monetary Damages, ECF No. 10.  Now, pending before the Court are defendants' motion to dismiss the first amended complaint and plaintiff's motion for leave to file a second amended complaint, which defendants oppose as futile.  *See* Defs.' Mot. to Dismiss Pl.'s Am. Compl., ECF No. 12; Pl.'s Combined Mot. for Leave to File Second Am. Compl. and Opp'n to Mot. to Dismiss, ECF No. 15[1]; Defs.' Opp'n to Pl.'s Mot. for Leave to File Second Am. Compl., ECF

---

[1]  Notwithstanding the title of plaintiff's submission, she presents no arguments in opposition to defendants' motion to dismiss her first amended complaint.

No. 19.  For the reasons discussed below, defendants' motion to dismiss is denied and plaintiff's motion for leave to amend her complaint is granted.

## I.      BACKGROUND

The allegations set out in plaintiff's proposed Second Amended Complaint for Declaratory Judgment, Injunctive Relief, and Monetary Damages ("2d Am. Compl."), ECF No. 15-1, are assumed to be true, with the factual circumstances underlying her legal claims described as follows.

### A.      Court Security Officers at the District of Columbia Courts

The District of Columbia Courts ("D.C. Courts"), including the Superior Court of the District of Columbia and the District of Columbia Court of Appeals, operate as an agency of the District of Columbia ("the District").  *Id.* ¶ 5.  The federal government, through the United States Marshals Service ("USMS"), negotiates contracts with private companies for security services at both federal courts and D.C. Courts, but contracted Court Security Officers ("CSOs") at the D.C. Courts do not report to the USMS as do CSOs in federal courts.  *See id.* ¶¶ 9-11.  The District pays "for the contractual services performed at the D.C. Courts."  *Id.* ¶ 9.

In 2011, the contract ("Inter-Con Contract") the USMS had awarded to Inter-Con Security Systems, Inc. ("Inter-Con") for security services at the D.C. Courts expired.  *See id.* ¶¶ 7-8.  In May 2011, the USMS awarded a contract to Akal Security, Inc. ("Akal") (Contract No.: OJMS-11-D-0512, "Akal Contract") for one year, beginning October 1, 2011, with options to extend to September 30, 2016, *id.* ¶ 8, for security services at both the D.C. Courts and federal courts in the District of Columbia, *see id.* ¶ 10.

Richard Parris ("Parris") was the Chief Security Officer for the D.C. Courts from August 2, 2010, through September 30, 2016, *see id.* ¶¶ 4, 14, 20, and "reported directly to the Deputy Executive Officer for the D.C. Courts," *id.* ¶ 14.  He served as the Contracting Officer's

Technical Representative ("COTR").  *See id.* ¶¶ 8, 15.  Only the COTR and the government's

contracting officer "had the authority to extend or otherwise modify the term(s) of the Contract."

*Id*. ¶ 8.  In his COTR capacity, Parris was responsible for "negotiating, implementing, and

managing the security contractor for the [D.C.] Courts," *id*. ¶ 15, having "authority to alter the

terms and conditions of the [Akal] Contract pertaining to the D.C. Courts," *id.*, and to "create[]

and implement[] all security and logistical protocols, policies [and] procedures[] involving

security personnel" at the D.C. Courts, *id.* ¶ 28.

 "Akal acquired and vetted its own applicants" for CSO positions at the D.C. Courts

"before submitting the applications of qualified applicants to the D.C. Office of Personnel

Management . . . and Federal Occupational Health . . . departments."  *Id*. ¶ 12.  After

investigative reports and medical examinations of the applicants were completed, Parris

reviewed the applications and selected candidates whose applications were forwarded to Akal

District Supervisors Lois Epps ("Epps") and Josiah Eaves ("Eaves") for final selection.  *Id.*

Anticipating the expiration of Akal's contract on September 30, 2016, the USMS Judicial

Security Division issued a Request for Proposals for Court Security Services.  *Id*. ¶ 17.  For the

period beginning October 1, 2016, the USMS awarded the contract (Contract No.: DJM-16-A32-

V-0023, "Paragon Contract") to Paragon Systems, Inc. ("Paragon").  *Id*. ¶ 18.  Parris allegedly

"participated in and was in direct communication with Paragon for the duration of the

solicitation, procurement, selection and negotiation of the Paragon Contract."  *Id*. ¶ 19.

### B.      Plaintiff's Employment as a Court Security Officer

Plaintiff's employment as a CSO commenced on or about October 4, 2010, under the

Inter-Con Contract, *see id*. ¶¶ 7, 22, and she principally worked at the H. Carl Moultrie

Courthouse, *see id*. ¶¶ 3, 23.  At some point, plaintiff became a Lead Special Security Officer

("LSSO").[2]  *See id.* ¶ 3.  Her employment continued under the Akal Contract without her having "to re-apply for her position, re-submit any paperwork, or otherwise re-establish her eligibility" to work at the D.C. Courts.  *Id.* ¶ 23.  If there were "any formal or informal 'certification' or other prerequisite for approval to work in the D.C. Courts as a CSO or [LSSO, plaintiff believed] that she attained said prerequisite and that it continued independent of any particular contract or contractor."  *Id.* ¶ 25.

The Akal "Contract governed all aspects of Akal's provision of security services to … the D.C. Courts," as well as "the terms and conditions of [p]laintiff's employment" as a CSO and LSSO. *Id.* ¶ 26.  Thus, defendants allegedly "control[ed] the day-to-day job activities and location assignments" of security personnel at the D.C. Courts, and "exercised the power to cause termination, demotion, suspension, or other work-related discipline."  *Id.* ¶ 21.  Parris allegedly "exercised direct and indirect supervisory control over the terms and conditions of [p]laintiff's employment and over other Akal employees, agents, and contractors assigned to the D.C. Courts."  *Id.* ¶ 4.  While plaintiff directly reported to Akal District Supervisors Epps and Eaves, Epps and Eaves reported to Parris and Akal Contract Manager Lawrence Frost ("Frost"). *Id.* ¶ 26.

Plaintiff believed "that she would continue to be employed by Akal until at least September 30, 2016," *id.*, when the Akal Contract expired.  She also believed that the terms and conditions of her employment would remain "largely unchanged" even if the contract were awarded to another security firm.  *Id.* ¶ 29.

---

[2]      Elsewhere, this position is identified as Lead Court Security Officer ("LCSO").  *See* 2d Am. Compl. at 2 (Introduction); *see id.* ¶ 25.

### C.        Plaintiff's Termination

An incident on June 10, 2016, prompted Akal to suspend plaintiff and place her on administrative leave.  *Id*. ¶ 36.  Akal did not complete an investigation of the incident.  *See id.* ¶ 34.  Notwithstanding Akal's intention "to undertake . . . progressive discipline" designed to "correct" plaintiff's "behavior . . . regard[ing] her relationships [with] her coworkers and management," *id.* ¶ 32, on that same day, Parris sought plaintiff's immediate removal.  He sent Frost an email message stating, in relevant part:

> LSSO Janice Coclough's documented behavior (as recently as this morning) has become intolerable in the District of Columbia Courts.  Please direct her to turn in her equipment and credentials and permanently remove her from this contract as soon as possible.  It is my suggestion that this is handled as a hostile separation and caution is taken by the District Supervisors when retrieving her weapon.

*Id*., Ex. 2 (emphasis removed); *see id*. ¶ 34.  Thus, plaintiff alleged, Parris "insinuated . . . that [she] was a security threat."  *Id.* ¶ 34; *see id.* ¶ 90.

At no time during her employment under the Inter-Con and Akal Contracts was plaintiff subjected to disciplinary action.  *Id*. ¶ 24.  "Plaintiff had never previously been informed of the 'documented behavior' against her amounting to violations of [the District's] or Akal's policy or procedures."  *Id*. ¶ 35.  On June 24, 2016, plaintiff appealed her suspension and placement on administrative leave.  *Id*. ¶ 37.  Parris allegedly denied plaintiff's appeal on July 26, 2016.  *See id*. ¶ 38.  In plaintiff's view, the appeal was neither fair nor impartial, given that "Parris . . . was the driving force behind her removal from the contract in the first place."  *Id*. ¶ 62.  She has alleged that the actions of the District and Parris, "in conjunction with those of Akal, amounted to . . . termination from her employment."  *Id*. ¶ 40.

Plaintiff's termination was effective July 26, 2016.  *See id.* ¶¶ 38, 40.[3]   In relevant part, the termination letter from Akal stated:

> Per Section H-3(d) of the contract between Akal Security, Inc. and the client, you were previously provided and exercised the opportunity to appeal *the Government's removal of your credentials*.  Your appeal documents were received by Akal Security, Inc. and were submitted to the client.
>
> *The client has received and denied your appeal*, and has upheld [its] previous decision *to permanently remove you from performing under the contract*[.]
>
> As a direct result of the Government's denial of your appeal and subsequent permanent order of removal, your employment as a LSSO with Akal Security, Inc. is terminated[.]

*Id.*, Ex. 3 (emphasis added).

According to plaintiff, the "client" referenced in the termination letter was the D.C. Courts.  *Id.* ¶ 41.  She understood Akal to mean that she could no longer work at a single location (a D.C. courthouse) for a single contractor (Akal) only for as long as the Akal Contract remained in effect.  *See id.* ¶¶ 41, 43-44, 50.  Plaintiff believed that she would have been eligible for employment at the D.C. Courts or at a federal courthouse in the District of Columbia under a different contract.  *See id.* ¶ 44.  Plaintiff had no "reason to suspect or believe that the circumstances surrounding her termination would amount to an eternal ineligibility for rehire in the entire CSO industry for any and all components of the court system, federal or otherwise, in perpetuity, in the District of Columbia."  *Id.* ¶ 45.

### D.    Plaintiff's Subsequent Search for Employment

Following her termination, plaintiff applied "for all manner of government security officer and officer trainer positions, in all federal and local court branches within and surrounding the District of Columbia, to no avail."  *Id.* ¶ 52; *see id.* ¶¶ 64-65.  For example, plaintiff applied for a position as a National Weapons Detection Training Program Instructor,

---

[3]    Plaintiff's termination is the subject of a separate lawsuit, *Coclough v. Akal Sec., Inc.*, No. 16-CV-2376.

and when a recruiter contacted Akal, an Akal representative reported that plaintiff was "'NOT eligible for rehire.'"  *Id*. ¶ 53 (emphasis in original).  Plaintiff also applied for a position with Paragon, *see id*. ¶¶ 54-55, but Paragon neither notified her of the status of her application nor explained why her application had been denied, *see id*. ¶ 56.  Plaintiff learned in October 2019 that "she was ineligible for employment as a CSO under Paragon's contract in the District of Columbia," *id*. ¶ 70, because she did "not meet the requirements for the CSO position," *id*., Ex. 5 at 1.

      **E.**    **"Blacklist"**

Plaintiff has attributed her predicament to placement on a "blacklist" that, in effect, "indefinitely prohibit[s her] from securing future comparable employment in the District of Columbia."  *Id*. ¶ 47; *see id*. ¶¶ 43-45.  She also learned that her "lack of traction" in the job market came about because defendants "revok[ed] some credential or eligibility requirement necessary to work within the court system as a CSO."  *Id*. ¶ 57; *see id*. ¶ 58.  Yet, she received no "correspondence or notification" from the District, the D.C. Courts, Parris, Akal, or the USMS "informing her of the eligibility or credential revocation" or that revocation "would amount to the permanent loss of her ability to work anywhere within the D.C. local or federal court system, regardless of the contract or contractor."  *Id*. ¶ 59 (emphasis removed).  Consequently, plaintiff alleged, she has reason to believe that "some kind of blacklist" exists, *id*. ¶ 67, and did not know, and could not have known, of defendants' authority or decision to blacklist her, *see id*. ¶ 69; *see id.* ¶ 47, or the date on which defendants blacklisted her, *see id*. ¶ 68, or the process for challenging placement on the blacklist and the revocation of a credential or eligibility to work as a CSO or LSSO in the D.C. Courts or a federal courthouse within the District of Columbia, *see id.* ¶ 72.

## II.    LEGAL STANDARD

"[T]he grant or denial of an opportunity to amend is within the discretion of the District Court[.]"  *Foman v. Davis*, 371 U.S. 178, 182 (1962).  While leave to amend a complaint should be freely granted when justice so requires, *see Firestone v. Firestone*, 76 F.3d 1205, 1208 (D.C. Cir. 1996) (citing Fed. R. Civ. P. 15(a)(2)), the court may deny a motion to amend if such amendment would be futile, *see Foman*, 371 U.S. at 182; *James Madison Ltd. v. Ludwig*, 82 F.3d 1085, 1099 (D.C. Cir. 1996).  "Amendment is futile if the amended complaint would not withstand a motion to dismiss."  *Hall & Assocs. v. Envtl. Prot. Agency*, 956 F.3d 621, 630 (D.C. Cir. 2020) (citing *Hettinga v. United States*, 677 F.3d 471, 480 (D.C. Cir.  2012) (per curiam)).

## III.    DISCUSSION

The proposed second amended complaint asserts in two counts, under 42 U.S.C. § 1983, that both defendants violated plaintiff's substantive and procedural due process rights protected by the Fifth Amendment to the United States Constitution.  *See* 2d Am. Compl. ¶¶ 1, 5; *see also id.* at 19, 23 (captions of Counts I ("Deprivation of Substantive Due Process") and II ("Deprivation of Procedural Due Process").[4]  "Section 1983 allows a plaintiff to seek money damages from government officials who have violated her constitutional rights."  *Butera v. District of Columbia*, 235 F.3d 637, 645 (D.C. Cir. 2001).  The Supreme Court has explained, "[u]nder the terms of the statute, '[e]very person' who acts under color of state law to deprive another of a constitutional right [is] answerable to that person in a suit for damages.'"  *Rehberg v. Paulk*, 566 U.S. 356, 361 (2012) (quoting *Imbler* v. *Pachtman*, 424 U.S. 409, 417 (1976) (citing 42 U.S.C. § 1983) (alterations in original)).  Thus, to state a claim under § 1983, a

---

[4]      The Court treats plaintiff's claims against Parris in his official capacity as if she brought them against the District directly.  *See Atchinson v. District of Columbia*, 73 F.3d 418, 424 (D.C. Cir. 1996) ("A section 1983 suit for damages against municipal officials in their official capacities is thus equivalent to a suit against the municipality itself.") (citing *Kentucky v. Graham*, 473 U.S. 159, 165-66 (1985)).

complaint "must allege the violation of a right secured by the Constitution and laws of the United States, and must show that the alleged deprivation was committed by a person acting under color of state law." *West v. Atkins*, 487 U.S. 42, 48 (1988) (citations omitted).

Defendants contend that plaintiff's proposed second amended complaint should be rejected as futile on three grounds: (1) the proposed pleading fails to state a claim for a violation of plaintiff's Fifth Amendment rights, Defs.' Opp'n at 6-10; (2) the proposed pleading "has not alleged facts that could establish a basis for municipal liability against the District under § 1983," *id*. at 4; and (3) qualified immunity protects Parris from suit, *id*. at 10-11.[5]  These arguments are addressed *seriatim*.

## A.  Plaintiff Adequately Pleads Violation of Constitutionally Protected Rights

The District argues that the plaintiff's proposed § 1983 claims are futile for failing to identify a liberty or property interest protected under the Fifth Amendment and for inadequately pleading due process violations.  *See generally* Defs.' Opp'n at 7-10.  The Court disagrees.

### 1.  Property Interests At Issue

The District asserts that plaintiff's supposed "eligibility" for employment as a CSO or LSSO at the D.C. Courts is not a recognized liberty or property interest and an individual has no fundamental right to government employment.  *See* Defs.' Opp'n at 7.  Without a constitutionally-protected property or liberty interest, the District deems the proposed pleading futile and urges dismissal.  *See id*. at 6, 8.  Plaintiff counters that the allegations of the proposed second amended complaint set forth a factual basis for three cognizable property interests: (1)

---

[5]      Defendants' motion to dismiss as time-barred the gender and sexual orientation discrimination claims asserted in plaintiff's first amended complaint under the District of Columbia Human Rights Act ("DCHRA"), 1st Am. Compl. ¶¶ 21-24 (Counts I and II), ECF No. 10, may be easily dispatched.  *See generally* Defs.' Mot. at 7-10, ECF No. 12-1.  Plaintiff has withdrawn these DCHRA claims and proposes to file the Second Amended Complaint without those claims.  *See* Pl.'s Mem. of P. & A. in Supp. of Combined Mot. for Leave to File Second Am. Compl. at 3-4, ECF No. 15.  Consequently, defendants' motion to dismiss the First Amended Complaint is denied as moot.

continued employment under the Akal Contract through September 30, 2016; (2) continued employment after expiration of the Akal Contract with new contractor; and (3) formal or informal certification or eligibility to work as a CSO or LSSO at the D.C. Courts.  *See generally* Pl.'s Reply in Support of Pl.'s Mot. for Leave to File Second Am. Compl. at 8-10, ECF No. 21. For example, plaintiff alleges that "[t]he certification to work with, for, or alongside the USMS and/or the D.C. Courts … was a property interest belonging to [her,]" without which she cannot "work . . . as a [CSO] in any capacity whatsoever in the District of Columbia."  2d Am. Compl. ¶ 72; *see id.* ¶ 74.  Further, plaintiff argues, her allegations support a claim of a liberty interest "in her freedom to continue to secure future employment in her chosen profession without harm to her reputation."  Pl.'s Reply at 10.  She alleges that revocation of her credentials resulted in "the total loss of her ability to seek comparable gainful employment with the D.C. Courts[.]" 2d Am. Compl. ¶ 76.

At this early stage of these proceedings, plaintiff has the better argument.  The D.C. Circuit has made clear that "[o]ne of the liberty interests protected by the Fifth Amendment is the right to 'follow a chosen profession free from unreasonable governmental interference,'" *Campbell v. District of Columbia*, 894 F.3d 281, 288 (D.C. Cir. 2018) (quoting *Greene v. McElroy*, 360 U.S. 474, 492 (1959)), and "[a] plaintiff can show a deprivation of that liberty interest . . . when the government takes certain adverse actions and those actions foreclose her freedom to pursue a chosen profession," *id.* (other citations omitted).  Based on the factual allegations of the proposed second amended complaint, the pleading "contain[s] sufficient factual matter, accepted as true, to 'state a claim to relief that is plausible on its face,'" *Ashcroft v. Iqbal*, 556 U.S. 662, 678 (2009) (quoting *Bell Atlantic Corp. v. Twombly*, 550 U.S. 544, 570 (2007)), as to the existence of a property or liberty interest in employment as a CSO or LSSO at

the D.C. Courts or federal courts in the District of Columbia, whether under the Akal Contract or under a subsequent contract, and her continued eligibility for similar employment.

### 2. *Procedural Due Process Claim*

"A procedural due process violation occurs when an official deprives an individual of a liberty or property interest without providing appropriate procedural protections." *Atherton v. District of Columbia Office of the Mayor*, 567 F.3d 672, 689 (D.C. Cir. 2009). The District argues that "[p]laintiff failed to make any specific factual allegations about what . . . Parris *actually did* to violate her due process rights." Defs.' Opp'n at 9 (emphasis in original). Referring to paragraph 89 of the proposed Second Amended Complaint, the District posits that plaintiff cannot offer just "the fact that she has not been re-hired by Akal (or hired by the current security contractor, Paragon Systems, Inc.) as proof – in and of itself – that Parris took some unknown action to violate her due process rights[.]" *Id*. The District's arguments do not hold up upon a fair reading of the proposed amended pleading in its entirety, however. Plaintiff points to two actions: Parris' direction to remove plaintiff from the Akal contract, *see* 2d. Am. Compl. ¶¶ 33-34, and the alleged revocation of plaintiff's "credentials," *see id.* ¶¶ 34, 86, without which plaintiff is no longer eligible for or qualified to hold a CSO or LSSO position, *see id.* ¶ 89.

A viable procedural due process claim calls upon the Court to determine, in addition to identifying a constitutional violation, whether plaintiff received the process to which she was entitled. *See Thompson v. District of Columbia*, 832 F.3d 339, 344 (D.C. Cir. 2016) (citations omitted). The District neither discusses what process plaintiff was afforded nor argues that plaintiff received the process she was entitled to receive. In contrast, plaintiff alleges that what little process she had – an appeal to Parris of her termination – was neither fair nor impartial. *See id*. ¶ 62. Without knowledge that defendants, in effect, revoked credentials or eligibility

requirements for continued or future employment at the D.C. Courts, plaintiff alleges that she

had no notice that the revocation would result in "the permanent loss of her ability to work

anywhere within the D.C. local or federal court system, regardless of the contract or contractor,"

*id*. ¶ 59 (emphasis removed); *see id.* ¶ 97, and had no meaningful opportunity to be heard on the

subject, *see id.* ¶¶ 62, 72, 77.  Plaintiff argues that defendants "stripped [her] of her property and

liberty interests . . . without any notice, explanation or opportunity . . . to be heard" prior to her

termination and the revocation of her "credentials." Pl.'s Reply at 14.  These allegations set out

sufficient facts to survive the District's motion.

### 3.  *Substantive Due Process Claim*

A substantive due process claim must allege unconstitutional behavior "so egregious, so

outrageous, that it may fairly be said to shock the contemporary conscience."  *Butera*, 235 F.3d

at 651 (quoting *County of Sacramento v. Lewis*, 523 U.S. 833, 847 n.8 (1998)).  This requires a

showing that government officials "are guilty of grave unfairness in the discharge of their legal

responsibilities."  *Silverman v. Barry*, 845 F.2d 1072, 1080 (D.C. Cir. 1988).  A claimant may

show grave unfairness in two ways.  "Only [1] a substantial infringement of state law prompted

by personal or group animus, or [2] a deliberate flouting of the law that trammels significant

personal or property rights, qualifies for relief under § 1983."  *George Washington Univ. v.

District of Columbia*, 318 F.3d 203, 209 (D.C. Cir. 2003) (quoting *Silverman*, 845 F.2d at 1080)

(additional citations omitted).

As was the case with plaintiff's procedural due process claim, the District argues that the

substantive due process claim cannot proceed because no specific factual allegations refer to

what Parris did to violate plaintiff's rights.  *See* Defs.' Opp'n at 9.  Again, the Court disagrees.

Plaintiff does not, as the District posits, rely solely on Akal's decision not to rehire her and

Paragon's decision not to hire her as proof of a due process violation.  *See id.*  Rather, plaintiff alleges that Parris, and by extension the District, took affirmative steps to terminate her employment with Akal and to block her prospects for future employment with Paragon or with another employer in the same or a similar field.  *See* 2d Am. Compl. ¶¶ 45-46, 50-54.  Further, plaintiff alleges that Parris' personal animus towards her prompted the termination decision.  *See id.* ¶ 34.  Defendants then allegedly failed to inform her that she is forever barred from employment at the D.C. Courts under a different contract.  *See id.* ¶¶ 42-43, 87.  In other words, the allegations of the complaint support plaintiff's position that "revocation of [her] ability to ever again obtain employment in the profession of [her] choosing . . . on the basis of a policymaker's personal animus demonstrates grave unfairness."  Pl's Reply at 14.  Plaintiff alleges sufficient facts to support a claim that defendants' actions were egregious, drastic or outrageous.

### B.    Municipal Liability

The District challenges the adequacy of plaintiff's proposed pleading to hold this municipality liable for any alleged constitutional violation.  At the outset, it bears noting that the Supreme Court has stressed that "no heightened pleading rule" applies in civil rights cases alleging municipal liability.  *Johnson v. City of Shelby*, 574 U.S. 10, 11 (2014) (per curiam) (citing *Leatherman* v. *Tarrant County Narcotics Intelligence and Coordination Unit*, 507 U. S. 163, 164 (1993)).  "[A] municipality can be liable as a 'person' under section 1983 only if the municipality is itself responsible for an unconstitutional deprivation of rights."  *Atchinson v. District of Columbia*, 73 F.3d 418, 420 (D.C. Cir. 1996) (citing *Monell v. Dep't of Soc. Servs. of the City of New York*, 436 U.S. 658, 690-91 (1978)).  Put another way, "the longstanding rule" is "that to prove a violation of § 1983, a plaintiff must prove that 'the municipality's own wrongful

conduct' caused his injury, not that the municipality is ultimately responsible for the torts of its employees." *Connick v. Thompson*, 563 U.S. 51, 70 n.12 (2011) (quoting *Los Angeles County* v. *Humphries*, 562 U.S. 29, 38 (2010)).  Consequently, the municipality cannot be held liable for the conduct of its employees based on the principle of *respondeat superior.  See Singletary v. District of Columbia*, 766 F.3d 66, 72 (D.C. Cir. 2014) (citing *Monell*, 436 U.S. at 691).  Instead, "[i]t is well established that in a § 1983 case a city or other local governmental entity cannot be subject to liability at all unless the harm was caused in the implementation of 'official municipal policy.'" *Lozman v. City of Riviera Beach*, 138 S. Ct. 1945, 1951-52 (2018) (quoting *Monell*, 436 U.S. at 691) (additional citation omitted); *see also Doe v. District of Columbia*, 796 F.3d 96, 105 (D.C. Cir. 2015) ("To impose liability on a local government for the torts of an employee, a plaintiff must prove that 'action pursuant to official municipal policy' caused his or her injury.") (citation omitted).  Absent any allegation of the existence of a municipal policy or custom, and "a direct causal link between a municipal policy or custom and the alleged constitutional deprivation," *City of Canton, Ohio v. Harris*, 489 U.S. 378, 385 (1989), the complaint is subject to dismissal, *see Baker v. District of Columbia*, 326 F.3d 1302, 1306 (D.C. Cir. 2003).

In considering whether plaintiff states a claim for municipal liability, the analysis proceeds as follows:

> First, the court must determine whether the complaint states a claim for a predicate constitutional violation.  Second, if so, then the court must determine whether the complaint states a claim that a custom or policy of the municipality caused the violation.

*Baker*, 326 F.3d at 1306 (citations omitted); *see Monell*, 436 U.S. at 694.  As discussed above, the first part of this analysis is satisfied because the proposed second amended complaint adequately alleges violation of plaintiff's constitutionally-protected due process rights.  As discussed in detail below, for the second part of this analysis, plaintiff's due process claims

against the District are viable only if she also adequately alleges that a policy or custom of the District caused the violation. The Court concludes that she meets this pleading requirement.

### 1.    *Municipal Policy or Custom*

The Supreme Court has observed that "[o]fficial municipal policy includes the decisions of a government's lawmakers, the acts of its policymaking officials, and practices so persistent and widespread as to practically have the force of law," all of which "are action[s] for which the municipality is actually responsible." *Connick*, 563 U.S. at 61 (internal citations and quotations omitted; second alteration in original); *see also Baker*, 326 F.3d at 1306 (listing "a number of ways in which a 'policy' can be set by a municipality to cause it to be liable under § 1983").

Defendants argue that plaintiff "does not identify a specific policy or custom pursuant to which Parris allegedly 'blacklisted' her; instead, plaintiff simply states that the 'blacklist'" itself is the municipal policy or custom at issue. Defs.' Opp'n at 5. In their view, "[p]laintiff fails to identify the character of the specific custom or policy or the source of the custom or policy." *Id.* at 6. Further, they argue, plaintiff identifies Parris as "a final policymaker without citing any statute or regulation suggesting he is so." *Id.* Yet, the proposed second amended complaint identifies the "blacklist," which allegedly prohibits plaintiff from securing employment comparable to her CSO and LSSO positions indefinitely, 2d Am. Compl. ¶ 47, as "an existing municipal policy or custom," *id.* ¶ 48; *see* Pl.'s Reply at 7 (describing the policy as "Parris's decision to remove Plaintiff from the [Akal Contract] and . . . to 'blacklist' [p]laintiff from future employment").

Defendants demand far too much of a complaint, which need only allege sufficient facts to state a plausible claim for relief. *See Iqbal*, 556 U.S. at 678 (quoting *Twombly*, 550 U.S. at 570). As already noted, no heightened pleading standard applies in a case alleging municipal

liability for civil rights violations, *see Leatherman*, 507 U.S. at 164, and a complaint "need not plead law or match facts to every element of a legal theory," *Sparrow v. United Air Lines, Inc.*, 216 F.3d 1111, 1115 (D.C. Cir. 2000) (citations omitted).  As drafted, plaintiff's proposed second amended complaint adequately alleges the existence of a municipal policy or custom, the implementation of which caused her constitutional injury.  *See Atchinson*, 73 F.3d at 420; *Williams v. District of Columbia*, 916 F. Supp. 1, 7 (D.D.C. 1996) (noting that plaintiff's "failure to allege a specific policy or custom . . . is no longer fatal to a Section 1983 claim when attacked in a motion to dismiss").

### 2.    *Parris as the Final Policymaker*

The D.C. Circuit has "emphasized that a 'single action can represent municipal policy where the acting official has final policymaking authority over the 'particular area, or * * * particular issue.'"  *Thompson v. District of Columbia*, 967 F.3d 804, 810 (D.C. Cir. 2020) (quoting *Thompson*, 832 F.3d at 347) (quoting *McMillian v. Monroe Cnty.*, 520 U.S. 781, 785 (1997)) (citing *City of St. Louis v. Praprotnik*, 485 U.S. 112, 123 (1988) (plurality opinion)); *see also Jett v. Dallas Indep. Sch. Dist.*, 491 U.S. 701, 737 (1989) (noting that *Monell* liability attaches where the offending official has "final policymaking authority for [the municipality] concerning the action alleged to have caused the particular constitutional or statutory violation at issue."); *Steinberg v. Gray*, 815 F. Supp. 2d 293, 299-300 (D.D.C. 2011) ("one of the ways in which a plaintiff can establish the existence of a municipal policy is through the actions of an individual with final policymaking authority.").  Of course, "simply labeling a defendant a 'policy maker' does not suffice to state a claim of municipal liability" because the "key element of such a claim is that the relevant official wielded final policy making authority with respect to

the allegedly unconstitutional conduct." *Jones v. District of Columbia*, 715 F. App'x 1, 3 (D.C. Cir. 2018) (internal citations and quotations omitted).

The proposed second amended complaint may not identify a statute or regulation conferring final policy-making authority on Parris, but nonetheless this proposed pleading does more than simply assert that Parris played this role. Instead, plaintiff's factual allegations sufficiently support a claim that Parris had final policymaking authority by detailing his responsibilities with respect to contracted security services at the D.C. Courts, the terms of the Akal and Paragon Contracts, and the terms and conditions of plaintiff's employment, without review or oversight by Parris's superiors or any District government official other than Parris, and his alleged role in effecting personnel actions adverse to plaintiff resulting in her alleged due process violations. These allegations suffice to allege that Parris is a final policymaker at the pleading stage of this litigation.

### C.    Qualified Immunity Does Not Bar Claims Against Parris At This Procedural Juncture

Generally, a government official "performing discretionary functions" enjoys qualified immunity "shielding [him] from civil damages liability as long as [his] actions could reasonably have been thought consistent with the rights [he is] alleged to have violated." *Anderson v. Creighton*, 483 U.S. 635, 638 (1987); *see Tolan v. Cotton*, 572 U.S. 650, 656 (2014); *Bame v. Dillard*, 637 F.3d 380, 384 (D.C. Cir. 2011). "[W]hether an official protected by qualified immunity may be held personally liable for an allegedly unlawful official action generally turns on the 'objective legal reasonableness' of the action, assessed in light of the legal rules that were 'clearly established' at the time it was taken." *Anderson*, 483 U.S. at 639 (citations omitted). "Clearly established means that, at the time of the [official's] conduct, the law was sufficiently clear that every reasonable official would understand that what he is doing is unlawful." *District*

*of Columbia v. Wesby*, 138 S. Ct. 577, 589 (2018) (citations and internal quotation marks omitted).  The doctrine affords officials "breathing room to make reasonable but mistaken judgments about open legal questions," *Ashcroft v. al-Kidd*, 563 U.S. 731, 743 (2011), and is thought to provide "ample protection to all but the plainly incompetent or those who knowingly violate the law," *Malley v. Briggs*, 475 U.S. 335, 341 (1986).  If a government official is entitled to qualified immunity, he is immune from suit and need not "stand trial or face the other burdens of litigation[.]" *Mitchell v. Forsyth*, 472 U.S. 511, 526 (1985).  "[E]ven such pretrial matters as discovery are to be avoided if possible[.]"  *Id.*

In *Saucier v. Katz*, 533 U.S. 194 (2001), the Supreme Court established a two-step analysis for resolving qualified immunity claims by government officials.  First, the court decides "whether the facts that a plaintiff has alleged or shown make out a violation of a constitutional right."  *Id.* at 201.  If plaintiff satisfies this first step, the court then decides whether the right at issue was clearly established at the time of defendant's alleged misconduct. *See id*.  The sequence of this analysis is not mandatory, however, and the court may "exercise [its] sound discretion in deciding which of the two prongs of the qualified immunity analysis should be addressed first in light of the circumstances in the particular case at hand."  *Pearson v. Callahan*, 555 U.S. 223, 236 (2009).

Parris asserts that he is entitled to qualified immunity and, therefore, must be dismissed as a defendant in this case.  *See* Defs.' Opp'n at 10.  As support, he argues, in two sentences, that plaintiff has not shown that a constitutional right has been violated, and even if such a showing has been made, "such a right was not . . . clearly established" at the relevant time.  *Id.* at 11. Plaintiff counters that no reasonable official in Parris's position could have believed that his actions, particularly "removing [her] ability to work in her chosen field," Pl.'s Reply at 15, for an

18

indefinite period, *see id.* at 16, were lawful.  Further, she argues that "Fifth Amendment due process protections of the right to continued employment or . . . to obtain subsequent . . . employment are sufficiently clear," and Parris "would know that what he [did] was wrong and violate[d]" her rights.  *Id.*

The only "facts" in this case thus far are plaintiff's allegations, which must be "grant[ed] [] the benefit of all reasonable inferences[.]"  *Trudeau v. Fed. Trade Comm'n*, 456 F.3d 178, 193 (D.C. Cir. 2006) (citation omitted); *see S.H. v. District of Columbia*, 270 F. Supp. 3d 260, 273 (D.D.C. 2017) ("[B]ecause the defendant officers seek to invoke their qualified immunity at the motion to dismiss stage, the Court must accept Plaintiffs' allegations as true and must draw all reasonable inferences derived from those allegations in Plaintiffs' favor.").  Among these allegations is plaintiff's assertion that "Parris . . . was aware of, or should have been aware of, the unconstitutional acts he . . . engaged in with regard to [p]laintiff's employment and ability to be employed in the future[.]" 2d Am. Compl. ¶ 93.

As discussed above, plaintiff adequately alleges violations of her right to procedural and substantive due process.  Whether the asserted constitutional right was clearly established is an issue the parties address only in passing.  Plaintiff plausibly alleges that defendants effectively ended her chosen career, even if the timing and precise means by which they did so are unknown at this stage of the proceedings.  *See, e.g.*, 2d Am. Compl. ¶¶ 63, 89; *cf. Pearson*, 555 U.S. at 238-39 ("When qualified immunity is asserted at the pleading stage, the precise factual basis for the plaintiff's claim or claims may be hard to identify.").  Further, the alleged facts support an inference that Parris, as Chief Security Officer and COTR of the Akal and Paragon Contracts, would understand that effecting plaintiff's removal from the Akal Contract and "blacklisting" her, thus thwarting her attempts to maintain or obtain a CSO, LSSO or a comparable law

enforcement position, by short-circuiting the inferred normal completion of an investigation, rejecting the purported recommended personnel action of her supervisors, and without notice or opportunity for a fair hearing, was unlawful.

The Court is mindful of its obligation to "resolv[e] immunity questions at the earliest possible stage in litigation." *Pearson*, 555 U.S. at 232 (quoting *Hunter* v. *Bryant*, 502 U.S. 224, 227 (1991) (per curiam)). In this case, however, given the scant record and plausible allegations, a ruling on Parris' qualified immunity claim is premature. Indeed, government officials' motions to dismiss are regularly denied on qualified immunity grounds when, as here, plausible allegations make out a viable violation of an allegedly clearly established constitutional right. *See, e.g., Kyle v. Bedlion*, No. 12-CV-1572, 2014 U.S. Dist. LEXIS 194599, *3-4 (D.D.C. Nov. 12, 2014) (declining to dismiss false arrest claim on qualified immunity grounds absent police officer's sworn testimony about events preceding plaintiff's arrest since court "cannot fairly assess the events in question and [officer's] knowledge of them—as an evaluation of probable cause and a determination of the applicability of qualified immunity requires"); *Phillips v. Mabus*, 894 F. Supp. 2d 71, 87-88 (D.D.C. 2012) (denying dismissal on qualified immunity grounds on claim that "*de facto* debarment . . . without due process and on grounds of dishonesty, fraud or lack of integrity violate[d] the Fifth Amendment," in light of government officials' factual disputes regarding their authority and the scope of preclusion from government contracting); *Brown v. Fogle*, 819 F. Supp. 2d 23, 30 (D.D.C. 2011) (concluding that, "[w]here Defendants have not proffered any evidence contradicting plaintiff's account [of actions taken by social workers and police officers responding to an anonymous report of child neglect,] there is no factual basis upon which the Court can assess the applicability of the qualified immunity defense"); *see also Kartseva v. Dep't of State*, 37 F.3d 1524, 1530 (D.C. Cir. 1994) (noting that

"limited discovery may be appropriate" where "resolution of the threshold question of the existence of a clearly established constitutional right requires information on the nature and effects of the government action that is exclusively within the domain of the government").

Accordingly, assessment of Parris' entitlement to qualified immunity must await further factual development in this litigation.

## IV.    CONCLUSION

Plaintiff's proposed second amended complaint adequately states claims upon which relief can be granted, and therefore plaintiff's motion for leave to file the amended pleading is granted.  Defendant's motion to dismiss the plaintiff's first amended complaint is denied as moot.  An order consistent with this Memorandum Opinion will be entered contemporaneously.

DATE:  September 16, 2020                    /s/ *Beryl A. Howell*

                                                    BERYL A. HOWELL
                                                    Chief Judge